PUBLISH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 13-cv-00795-REB

SANDRA J. MORGAN,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

## ORDER REVERSING DISABILITY DECISION
## AND DIRECTING AWARD OF BENEFITS

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed March 27, 2013, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse the decision and direct an award of benefits in plaintiff's favor.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of headaches, fibromyalgia and associated musculoskeletal pain, chronic sinusitis, and an affective disorder. The

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

present application for disability insurance benefits was filed in December 2001. The initial denial of the claim was appealed to an administrative law judge (ALJ), who issued an unfavorable determination in 2003. (Tr. 14-25.) After plaintiff appealed that decision to this court, the Commissioner moved to remand, and the district court returned the case to the agency for further proceedings. (Tr. 475-479, 481-482.) A second hearing resulted in a partially favorable determination in 2006 (Tr. 454-466), and plaintiff again appealed. The case was remanded again on the Commissioner's motion. (Tr. 692-693.) A third hearing, before a different ALJ, was held on June 28, 2011. At the time of this most recent hearing, plaintiff was 62 years old. She has a high school general equivalency diploma and past relevant work experience as an investigator, program director, nurse assistant, recreational therapist, and kitchen supervisor. She has not engaged in substantial gainful activity since April 15, 1999, her alleged date of onset.

The ALJ found that plaintiff was not disabled prior to her 55th birthday on December 15, 2003, and therefore not entitled to disability insurance benefits prior to that date, but that she was disabled thereafter.[2] Although the medical evidence established that plaintiff suffered from severe impairments, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found that plaintiff had the residual functional capacity to perform a range of light work with various non-exertional limitations. Although this finding precluded plaintiff's past relevant work, the judge concluded that there were other jobs that existed in significant numbers in the national economy she could

---

[2] On that date, plaintiff's age category changed to that of an individual of "advanced age." Under Rule 202.06 of the Commissioner's Medical-Vocational Guidelines (the "Grids"), a person of that age with plaintiff's education and work experience would be considered presumptively disabled.

perform. She therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or

>    equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4.   If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5.   If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v).  **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  **Id.**  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  **Casias v. Secretary of Health & Human Services**, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  **Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495, 1497-98 (10th Cir. 1992); **Brown v. Sullivan**, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  **Brown**, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence.  **Hedstrom v.**

*Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff's primary argument on appeal is that the ALJ erred in failing to give sufficient reasons for discrediting the opinion of her treating source, William Schroeder, D.O.[3] I agree, and conclude further that any honest assessment of Dr. Schroeder's opinion would require the Commissioner to afford it dispositive weight. I therefore direct an award of benefits for the full period of alleged disability.

Plaintiff has a long history of recurrent, severe headaches of unknown etiology, even prior to her alleged date of onset. She routinely sought emergency room treatment for her symptoms, which included, most significantly, extensive vomiting. (*See* Tr. 176-185, 196, 198-200, 205-206, 263.) Plaintiff began seeing Dr. Richard Thomas in June 2000 for treatment of headaches occurring approximately every three weeks. She was tried on various medications, which initially were effective but caused not-insignificant side effects and seemed to quickly lose effectiveness. (*See, e.g.*, Tr.

---

[3] Plaintiff presents a host of other arguments, many of which are poorly developed and/or inadequately substantiated. I would not consider these arguments, even if they were necessary to my determination. *Hulsey v. Astrue*, 2010 WL 618472 at *4 (D. Colo. Feb. 19, 2010); *Jack v. Astrue*, 2010 WL 3615022 at *3 (D. Colo. Sept. 10, 2010).

217, 218, 219, 223.)  Plaintiff did report that injectable Imitrex was effective, but it resulted in rebound headaches within a short time.  Moreover, Dr. Thomas was concerned with the amount of Imitrex plaintiff was using to control her headaches – reported as up to three times a week – and the cumulative effects of the medication.  (Tr. 213.)

The medical evidence demonstrates that throughout the alleged period of disability, plaintiff experienced some waxing and waning of her headaches.  (*See, e.g.*, Tr. 196, 198, 199-200, 205, 211-213, 217, 218, 225, 278, , 279, 282-283, 288, 287, 289, 290, 292, 317, 319, 321, 322, 323, 324, 341, 348, 351, 354, 356.)  Nevertheless, her symptoms were seldom quiescent for long – at best, it appears plaintiff went no more than a few weeks at any one time without a significant headache.  Within this general framework, plaintiff's headaches came with some regularity, about once every two to three weeks on average, although sometimes more frequently, and typically lasting for days at a time.  She continued to use large doses of Imitrex despite its negative side effects, claiming that she would kill herself without the injections.  (Tr. 359.)  Indeed, in the summer of 2003, plaintiff had suicidal thoughts and reported that she had put a gun to her head.  (Tr. 427, 429.)

In March 2003, Dr. Schroeder issued an opinion in which he noted that plaintiff suffered from "debilitating" headaches several times each month.  He endorsed multiple triggers and exacerbating circumstances and noted that plaintiff "is basically non-functional" while she was having a headache, needing hours or even days of complete rest to relieve her symptoms.  The side effects of her various medications were reported to include drowsiness, fatigue, chest pain, and anxiety.  He suggested that plaintiff

restrict sitting, standing, and walking – albeit without specifying any particular limits on those activities – and imposed a five-pound lifting restriction based on chronic lateral epicondylitis (i.e., tennis elbow).  He also stated that plaintiff was incapable of even low stress jobs and would be absent from work more than four days per month due to her impairments.  (Tr. 371-373.)  The ALJ afforded this opinion "little weight."  The reasons she did so, however, ultimately do not bear scrutiny.

The ALJ first noted that Dr. Schroeder had not specified any particular limits on plaintiff's ability to sit, stand, or walk.  (Tr. 680.)  Given the remainder of Dr. Schroeder's opinion, however, it would be disingenuous to conclude from the absence of such a statement that he believed plaintiff had any appreciable abilities in this regard.  Even so, where the evidence provided by a treating source is found inadequate to determine whether the claimant is disabled, the ALJ

> is *required* to recontact a medical source, including a treating physician, to determine if additional needed information is readily available. . . .  The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden.

*White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (emphasis added).  *See* 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved[.]").[4]  The ALJ's failure to make such an effort in this case undermines her reliance on this factor as a valid basis for discrediting Dr. Schroeder's opinion.

---

[4] Indeed, Dr. Schroeder specifically solicited further inquiries in a separate notation within his opinion.  (*See* Tr. 373.)

The ALJ also discredited Dr. Schroeder's suggestion that plaintiff was incapable of even low stress jobs, noting in this regard that plaintiff had worked part-time from June 2000 to September 2001 as a meal site manager at a senior center. (Tr. 680.) Plaintiff's own description of her work at that job, however, paints a much less benign picture. Plaintiff explained that as her headaches increased in frequency and severity in this period, she frequently was required to take breaks due to pain and vomiting, and to administer injections. She also frequently was absent, which the ALJ did not discuss at all. (*See* Tr. 40-41, 117; *see also* Tr. 789-790 (high absenteeism at previous job as well).) The failure to acknowledge and address these discrepancies between what the work required and what plaintiff actually could do does not constitute substantial evidence in support of the disability determination.[5]

The ALJ further suggested that plaintiff's activities of daily living demonstrated a greater degree of functional capacity than that attested to by Dr. Schroeder. However, activities of daily living rarely translate well into a determination of what a claimant can do on a sustained basis in the workplace. *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). The fairly minimal activities recited by the ALJ here hardly are indicative of the ability to withstand the demands of competitive employment. Moreover, the ALJ's description of plaintiff's activities of daily living dramatically understates the

---

[5] Plaintiff frankly acknowledged that she had a long history of migraines – albeit of lesser frequency and severity prior to her alleged date of onset – that encompassed the larger portion of her working life. This history, and the fact that plaintiff attempted to continue working at some level even after her headaches became worse, is in fact a factor in favor of her claim. *See Tyson v. Apfel*, 107 F.Supp.2d 1267, 1270 (D. Colo. 2000) ("Where a claimant has a good work history, she is entitled to substantial credibility when she then asserts that she is unable to work.").

record.[6]  Although plaintiff did report that she performed routine household chores, she clarified that "it depends on whether or not I have a [headache] or tendinitis – most of the time I am not able to finish the day to day chores" (Tr. 114), and that "on days when I have a [headache] I just brush my teeth & wash my face" (Tr. 115).  Thus, neither the law nor the evidence substantiate this factor as a valid basis for discrediting Dr. Schroeder's assessment.

      Finally, the ALJ described Dr. Schroeder's treatment notes from March 2003 as suggesting that plaintiff's headaches "had improved in terms of frequency and severity." (Tr. 680.)  This interpretation of the specific treatment record is utterly disingenuous, as is the larger implication that plaintiff's condition improved to any significant degree.  On March 4, 2003, Dr. Schroeder reported that while plaintiff's headaches had "improved in terms of frequency and severity," they were "still a relatively severe problem for her." (Tr. 341.)[7]  Moreover, the longitudinal picture provided by Dr. Schroeder's treatment notes plainly shows that, although plaintiff sometimes could go a few weeks without experiencing a headache, her condition was chronic and unremitting, requiring ever-increasing dosages and ever-more powerful forms of medication.  Such failure of a

---

[6] In addition, none of the three exhibits cited globally by the ALJ appears to directly address this particular issue.  Exhibit 23F comprises nearly 30 pages of Dr. Schroeder's treatment notes (Tr. 340-369), and Exhibits 24F and 31F are identical copies of Dr. Schroeder's functional capacity opinion (Tr. 370-373, 632-636).  Even if these exhibits had been relevant to this finding, I continue to criticize the Commissioner for what appears to be a trend of relying on sweeping, non-specific citations to the record in support of her decisions.  *See Phillips v. Colvin*, – F.Supp.3d –, 2014 WL 4636379 at *3 n.4 (D. Colo. Sept. 16, 2014); *Russ v. Colvin*, – F.Supp.3d –, 2014 WL 4553235 at * (D. Colo. Sept. 15, 2014); *Cira v. Colvin*, – F.Supp.3d –, 2014 WL 4437285 at *3 (D. Colo. Sept. 9, 2014); *Guttierez v. Colvin*, – F.Supp.3d –, 2014 WL 4437280 at *4 (D. Colo. Sept. 9, 2014).

[7] Moreover, conspicuously absent from the ALJ's finding in this regard was any consideration of whether plaintiff's headaches were still disabling even if they were less frequent and severe than previously..

condition to respond to treatment is the essence of disability.[8]  **See Chambliss v. Massanari**, 269 F.3d 520, 522 (5th Cir. 2001) (pain is disabling when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment"); **Marr v. Colvin**, – F.Supp.3d –, 2014 WL 4494779 at *4 (D. Colo. Sept. 12, 2014).

In sum, this court finds that none of the reasons stated by the ALJ substantiates her decision to afford minimal weight to Dr. Schroeder's opinion.  **See Watkins v. Barnhart**, 350 F.3d 1297, 1301 (10th Cir. 2003) (treating source opinion may be rejected only for good cause for specific, legitimate reasons clearly articulated in the hearing decision).  The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); **see also Watkins**, 350 F.3d at 1300.  The medical and other evidence in the record, both that discussed by the ALJ and that she did not discuss, fully supports Dr. Schroeder's opinion as to the nature and severity of plaintiff's limitations.  Had his opinion been afforded the weight to which it plainly was entitled, the Commissioner would have been compelled to find her disabled from her alleged date of onset.

Even if there were some remote question in this court's mind as to the propriety of directing an award of benefits in this case, I nevertheless would exercise my discretion in that regard here.  **See Nielson v. Sullivan**, 992 F.2d 1118, 1122 (10th Cir.

---

[8] The ALJ's assertion that plaintiff's condition was treated conservatively with medication (Tr. 678) assumes, improperly, that more aggressive treatments were available and potentially efficacious.  No medical source has ever so stated.  Moreover, it appears that plaintiff has consistently tried different medications and different treatment modalities, all with limited success.  **See Luna v. Bowen**, 834 F.2d 161, 165-66 (10th Cir. 1987) (in evaluating credibility of complaints of pain and limitation, ALJ should consider, *inter alia*, "a claimant's persistent attempts to find relief for his pain and his willingness to try any treatment prescribed," as well as "regular contact with a doctor").

1993).  Plaintiff filed her application for disability insurance benefits in 2001.  *See Adamson v. Astrue*, 2012 WL 4378120 at *4 (D. Colo. Sept. 25, 2012) (length of time the matter has been pending relevant factor in determining whether to direct award of benefits) (citing *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).  Nearly thirteen years and three administrative hearings and decisions later, the Commissioner still has been unable to articulate any justifiable basis for denying plaintiff a full award of benefits.  Moreover, plaintiff is now 65 years old.  All these considerations lead me to conclude that there is no reason to further delay an award of benefits to which plaintiff plainly is entitled.  *See Railey v. Apfel*, 1998 WL 30236 at *4 (10th Cir. Jan. 9, 1998); *Emory v. Sullivan*, 936 F.2d 1092, 1095 (10th Cir. 1991); *Nielson*, 992 F.2d at 1122.

### IV.  ORDERS

**THEREFORE IT IS ORDERED** as follows:

1.  That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2.  That **JUDGMENT SHALL ENTER** in favor of plaintiff against the Commissioner;

3.  That the Commissioner is **DIRECTED** to award plaintiff benefits as of the alleged date of onset of her disability, April 15, 1999, through the date on which she previously was adjudged disabled, December 15, 2003; and

4.  That plaintiff is **AWARDED** her costs, to be taxed by the clerk of the court pursuant to **FED. R. CIV. P**. 54(d)(1) and **D.C.COLO.LCivR** 54.1, and as permitted by 28 U.S.C. § 2412(a)(1).

Dated September 18, 2014, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge